Scheffer v State of New York (2025 NY Slip Op 51759(U))

[*1]

Scheffer v State of New York

2025 NY Slip Op 51759(U)

Decided on October 14, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 14, 2025
Court of Claims

Daniel Scheffer, as Administrator of the Estate of Deborah Scheffer, Deceased, and DANIEL SCHEFFER, individually, Claimants,

against
The State of New York, Defendant.

Claim No. 133154

For Claimants:
KRAMER, DILLOF, LIVINGSTON & MOORE
By: Carmine A. Rubino, Esq.
For Defendant:
LETITIA JAMES, NEW YORK STATE ATTORNEY GENERAL
By: John C. Hunt, Esq., AAG

Linda K. Mejias-Glover, J.

Defendant moves by Notice of Motion filed with the Clerk of the Court on May 14, 2025, seeking an order, pursuant to Court of Claims Act §§ 10 (3) and 11 (b) and CPLR 3126, striking the allegations contained in Claimants' Bill of Particulars and Supplemental Bill of Particulars and precluding evidence at trial relating to the new theories of liability and dates of alleged negligence not raised in the Notice of Intention to File a Claim or Claim on the grounds that Claimants' failure to allege those new theories of liability in her Notice of Intention or Claim violated the requirements of Court of Claims Act section 11(b) to specify the nature of claim and the date when it arose with sufficient particularity. Defendant seeks to strike allegations from the Bill of Particulars and Supplemental Bill of Particulars and preclude evidence at trial relating to the below theories of liability: 1) that Stony Brook Southampton Hospital, its employees or agents failed to enact or create policies related to treatment of Jehovah's Witnesses or cell saver [*2]on or prior to February 9, 2018; 2) that Stony Brook Southampton Hospital, its employees or agents should have offered or provided cell saver to decedent; 3) that Stony Brook Southampton Hospital, its employees or agents should have transferred decedent to Stony Brook University Hospital; 4) that Stony Brook Southampton Hospital, its employees or agents failed to meet the Jehovah's Witness Community representative prior to February 9, 2018; and 5) that Stony Brook Southampton Hospital, its employees or agents had an affirmative obligation to educate and notify obstetricians, anesthesiologists or any other hospital staff about how Jehovah's Witnesses should be treated on or prior to February 9, 2018.
Claimants cross-move by Notice of Cross-Motion filed June 24, 2025, seeking an Order for costs and sanctions against the Defendant based on frivolous conduct under 22 NYCRR 130-1.1 (c).
Relevant Procedural History and Unrefuted Factual
Background
On or about May 3, 2018, Claimants served a Notice of Intention to File a Claim and thereafter filed the Verified Claim with the Clerk of the Court on May 29, 2019. Issue was joined on June 13, 2019. On July 31, 2019, Claimants served a Verified Bill of Particulars. On December 27, 2024, Claimants served a Supplemental Bill of Particulars. The Note of Issue and Certificate of Readiness was filed by Claimants on February 13, 2025.
This claim of medical malpractice and wrongful death arises from the care and treatmentrendered by Stony Brook Southampton Hospital to decedent, Deborah Scheffer, (hereinafter, the "Decedent") a Jehovah's Witness who died on February 9, 2018, after suffering a post-partum bleed. Claimants assert that, among other things, Stony Brook Southampton Hospital was not equipped to handle Decedent's labor and delivery considering her known high-risk pregnancy and inability to accept blood transfusions because she was a Jehovah's Witness.
Claimants allege that on February 9, 2018, at Southampton Hospital, Decedent's private obstetrician, Constantine Bakas, M.D., who was not a New York State employee or agent at that time, performed a planned vaginal delivery of her son. Following the vaginal delivery, Ms. Scheffer experienced significant vaginal bleeding and a significant drop in blood pressure, and despite resuscitation efforts, was pronounced dead. Both, Claimant, Daniel Scheffer, and the Decedent, were Jehovah's Witnesses. In keeping with their religious beliefs, the Decedent refused to receive blood transfusions while at Southampton Hospital. It is not disputed that Daniel Scheffer refused to give Decedent's treating physicians at Southampton Hospital permission to give her a blood transfusion when complications arose immediately after the delivery of their son on February 9, 2018. The doctors treating Decedent were barred from using blood transfusions, which they otherwise would have used to attempt to save her life.
Points of Counsel
In support of its motion, Defendant contends that Claimants' Notice of Intention and Claim fail to satisfy the pleading requirements of Court of Claims Act § 11 (b), which mandates that a claim state with particularity both the nature of the claim and the time when it accrued. Defendant argues that Claimants' subsequent effort to expand their allegations through the Bill of Particulars and Supplemental Bill of Particulars is procedurally improper, as those documents may not be used to assert new theories of liability or causes of action not fairly encompassed within the original pleadings.
Defendant maintains that the newly asserted claims, such as the failure to implement protocols for treating Jehovah's Witness patients, to adopt a cell saver policy, or to educate staff on alternatives to blood transfusion, concern omissions predating the February 9, 2018 accrual [*3]date identified in the Notice of Intention. According to Defendant, these allegations were not included in the original filings and thus deprived the State of its statutory opportunity to investigate them within the 90-day period prescribed by Court of Claims Act §§ 10 (3) and 11. Defendant further asserts that the original Notice of Intention focused exclusively on the events of February 9, 2018, which pertained to the medical management of Decedent's labor and delivery by her private attending physician, Dr. Bakus, for whom the State cannot be held vicariously liable.
Moreover, Defendant argues that the Notice of Intention contains no specific allegations of independent negligence by Southampton Hospital or its staff, aside from vague references to a failure to provide qualified personnel. Defendant contends that Claimants' counsel erroneously presumed that the State could be held liable for Dr. Bakus's conduct, despite his status as a non-employee with admitting privileges. Defendant emphasizes that hospital staff were not informed of Decedent's religious objection to blood transfusions until her admission on February 9, 2018, and that her care remained under the direction of Dr. Bakus throughout.
In opposition to Defendant's motion and in support of their cross-motion, Claimants assert that their Notice of Intention satisfies the jurisdictional requirements of Court of Claims Act §§ 10 (3) and 11 (b). They contend that the Notice of Intention adequately identified the time and place of the alleged malpractice, described the nature of the claims, and provided sufficient information to enable the State to investigate and assess potential liability in this medical malpractice and wrongful death action.
Claimants maintain that the allegations set forth in the Bill of Particulars and Supplemental Bill of Particulars are not new claims, but permissible amplifications of the original malpractice theory. They argue that § 11 (b) does not require a claimant to enumerate every theory of liability in the Notice of Intention, and that Defendant's assertion to the contrary misstates the applicable legal standard. Claimants further emphasize that the Bills of Particulars are governed by CPLR 3042 and 3043, which serve a distinct procedural function from the jurisdictional requirements of the Court of Claims Act.
Claimants also dispute Defendant's reliance on CPLR 3126, arguing that it is inapplicable absent a willful failure to comply with discovery obligations or court orders—none of which occurred here. They contend that Defendant's attempt to invoke CPLR 3126 to strike allegations or preclude evidence is procedurally improper. Likewise, they argue that Defendant's challenge to allegations involving non-State actors should be raised, if at all, through a motion for summary judgment under CPLR 3212, not a pre-trial motion to strike.
Finally, Claimants assert that Defendant's motion is procedurally flawed and legally unsupported. They maintain that the Notice of Intention provided adequate notice, that the Bills of Particulars were timely and properly served in accordance with CPLR provisions, and that Defendant's efforts to exclude allegations or limit proof are without merit. Accordingly, Claimants urge that Defendant's motion be denied in its entirety and that their cross-motion be granted.
In opposition to Claimants' cross-motion and in further support of its own motion, Defendant contends that Claimants are improperly attempting to advance new theories of liability not set forth in the Notice of Intention, in contravention of Court of Claims Act § 11 (b). Specifically, Defendant argues that allegations concerning institutional failures—such as inadequate hospital policies, lack of cell saver technology, and unavailability of synthetic clotting factors—are absent from the original Notice of Intention, which focused solely on [*4]alleged malpractice by Dr. Bakas during the February 9, 2018, labor and delivery. Defendant maintains that these newly asserted claims of direct negligence are not mere elaborations but constitute a distinct and jurisdictionally defective basis of liability.
Defendant further asserts that the Notice of Intention contains no allegations that could reasonably be construed to encompass the institutional theories now advanced. The Notice of Intention does not identify any timeframe prior to February 9, 2018, by which hospital administrators allegedly should have implemented protocols or arranged for resources specific to Jehovah's Witness patients. Defendant argues that this omission fails to satisfy the statutory requirement of particularity under § 11 (b), and that the State cannot be expected to infer unstated claims. Moreover, Defendant maintains that Claimants' reliance on CPLR 3042 and 3043 is misplaced, as those provisions govern procedural mechanics and do not permit expansion of jurisdictional pleadings. Defendant also contends that CPLR 3126 provides an appropriate remedy to preclude evidence and strike allegations improperly introduced through the Bills of Particulars.
Finally, Defendant urges the Court to deny Claimants' cross-motion for sanctions, asserting that it is frivolous and unsupported by law. Defendant maintains that its motion is grounded in good faith and supported by controlling authority, including Wright v State of New York, 43 NY3d 532 (2025), and Rebecca J. v State of New York, 239 AD3d 623 (2d Dept 2025), both of which reaffirm the strict compliance required under § 11 (b).
In further support of their cross-motion, Claimants argue that Defendant's application is frivolous, as it relies on repeated misstatements of the record intended to mislead the Court. They contend that the Notice of Intention does not reference Dr. Bakus, yet Defendant insists that all alleged departures concern his conduct. Claimants emphasize that Defendant concedes two allegations, to wit: 1) failure to provide qualified medical personnel; and 2) failure to supervise obstetrical care; which are plainly attributable to Southampton Hospital. They maintain that Defendant's attempt to reframe the Notice of Intention as solely directed at Dr. Bakus is unsupported by its plain language.
Claimants further assert that Defendant offers no evidentiary basis for its claim that all allegations must be read as vicarious liability for Dr. Bakus. They argue that Defendant improperly seeks to test the sufficiency of these claims through a motion to strike, rather than by summary judgment under CPLR 3212. Claimants maintain that this procedural maneuver is designed to circumvent proper litigation channels and preclude relevant evidence. They also reiterate that the Notice of Intention pled systemic negligence by the hospital in managing the care of a Jehovah's Witness patient, and that such allegations were appropriately amplified in the Bills of Particulars following discovery—none of which Defendant previously challenged.
Finally, Claimants contend that their use of original and supplemental Bills of Particulars was authorized under CPLR 3042 and 3043, which permit supplementation with facts learned during discovery. They argue that Defendant's refusal to acknowledge the distinction between jurisdictional pleading under Court of Claims Act § 11 (b) and evidentiary amplification under the CPLR underscores the baseless nature of its motion. Accordingly, Claimants urge the Court to deny Defendant's motion in its entirety and to impose sanctions pursuant to 22 NYCRR 130-1.1 to remedy the prejudice caused and deter similar conduct.
Law and Analysis
Section 11 (b) of the Court of Claims Act requires that a claim filed against the State set forth the time, place, nature of the claim, and the damages or injuries alleged with sufficient [*5]specificity to enable the State to investigate the claim promptly. Failure to comply with these pleading requirements constitutes a jurisdictional defect, rendering the claim subject to dismissal (see Lepkowski v State of New York, 1 NY3d 201). To satisfy the requirements of Court of Claims Act § 11 (b), the claims must set forth facts with sufficient definiteness " 'to enable the state . . . to investigate the claim(s) promptly and to ascertain its liability under the circumstances' " (id. at 207, quoting Heisler v State of New York, 78 AD2d 767 [4th Dept 1980]).
Court of Claims Act § 11 (b) requires that a claim and notice of intention state the nature of the claim with sufficient specificity to allow the State to investigate and assess liability. Courts have held that [a] theory of liability not set forth in the notice of intention is jurisdictionally defective and must be dismissed (Cendales v State of New York, 2 AD3d 1165, 1166 [3d Dept 2003]; see also Lepkowski, 1 NY3d at 207 [2003]). Accordingly, where a claimant asserts new theories of recovery not included in the notice of intention, the State is entitled to seek relief in the form of striking those allegations and excluding related evidence at trial.
"The statement must be specific enough so as not to mislead, deceive or prejudice the rights of the State. In short, substantial compliance with section 11 is what is required" (Grumet v State of New York, 256 AD2d 441, 442 [2d Dept 1998] [internal quotation marks omitted]). "Even when Defendant has knowledge of the underlying facts and will suffer no prejudice by allowing the claim to proceed, the clam cannot be saved if it does not meet the minimal pleading requirements under the statute" (Sabine v State of New York, Ct Cl, May 28, 2015, Fitzpatrick, J., claim No. 125759, UID No. 2015-018-620, citing Kolnacki v State of New York, 8 NY3d 277 [2007], and Morra v State of New York, 107 AD3d 1115 [3d Dept 2013]).
Although the New York Court of Claims is governed by its own procedural rules codified in 22 NYCRR Part 206, it generally adheres to the provisions of the CPLR unless expressly stated otherwise (Lichtenstein v State of New York, 93 NY2d 911, 913 [1999]).
CPLR 3042 establishes the procedural framework governing demands for and responses to bills of particulars in New York civil practice, including the form, timing, and remedies available for noncompliance. Subdivision (d) specifically authorizes a party to move to strike or compel a bill of particulars where the responding party fails to serve a timely or adequate response.
A bill of particulars is considered deficient when it fails to meaningfully respond to the items demanded, omits material factual allegations necessary to amplify the pleadings, or is so vague and conclusory that it impairs the opposing party's ability to prepare a defense. As the Second Department has emphasized, "[t]he purpose of a bill of particulars is to amplify the pleadings, limit the proof, and prevent surprise at trial" (Holmes v City of New York, 132 AD3d 952, 953 [2d Dept 2015]).
Where a party fails to comply with disclosure obligations, including court orders compelling a proper bill of particulars, CPLR 3126 authorizes the court to impose sanctions ranging from preclusion of evidence to dismissal of the action. The statute provides that if a party "refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed," the court may issue appropriate relief, and such sanctions are warranted where the noncompliance is deemed willful or contumacious (Gibbs v St. Barnabas Hosp., 16 NY3d 74, 78 [2010]; Kihl v Pfeffer, 94 NY2d 118, 122 [1999]).
The "drastic remedy" of striking a pleading should be reserved to those situations where the offending conduct is willful, contumacious, or in bad faith. While a court may order [*6]dismissal of an action or a claim therein as a penalty for noncompliance with disclosure demands or orders (see CPLR 3126 [3]), this type of drastic remedy is reserved for situations where a party's failure to comply is "willful, contumacious, or in bad faith" (Harris v City of New York, 211 AD2d 663, 664 [2d Dept 1995]).
Upon review of the submissions and consideration of the arguments advanced by both parties, the Court finds that the Notice of Intention to File a Claim and the Claim sufficiently comply with the jurisdictional requirements of Court of Claims Act §§ 10 (3) and 11 (b). The documents identify the time and place of the alleged malpractice, describe the nature of the claims, and provide adequate information to enable the Defendant to investigate the allegations and assess potential liability.
The Court is not persuaded by Defendant's contention that the allegations set forth in the Bill of Particulars and Supplemental Bill of Particulars constitute impermissible new theories of liability. Rather, the Court finds that these allegations reflect permissible amplifications of the claims originally asserted, and are consistent with the procedural framework established under CPLR 3042 and 3043. Defendant's attempt to preclude trial evidence or strike portions of the pleadings on this basis is procedurally and substantively unsupported.
Upon consideration of Claimants' motion for the imposition of sanctions, the Court finds that Defendant's conduct does not rise to the level of frivolousness as contemplated by 22 NYCRR § 130-1.1 and therefore does not warrant the imposition of monetary or other sanctions. Pursuant to 22 NYCRR § 130-1.1(c), conduct is deemed frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false.
Upon review of the record, the Court does not find that Defendant's actions meet any of these criteria. Specifically, the Court does not conclude that Defendant's alleged "repeated misstatements of the record" were made with the intent to mislead or that they constitute false assertions of material fact. Accordingly, the motion for sanctions is denied.
DECISION AND ORDER
Applying the governing legal principles here, the Court finds that Defendant is not entitled to an order striking the allegations contained in Claimants' Bill of Particulars and Supplemental Bill of Particulars concerning the asserted "new theories" of liability. The Court concludes that these allegations constitute permissible elaborations of the claims set forth in the original pleadings and do not warrant preclusion.
The Court further finds that Claimants are not entitled to an order imposing sanctions upon Defendant. While the parties vigorously dispute the scope and sufficiency of the pleadings, the Court does not find that Defendant's conduct rises to the level of frivolousness as defined by 22 NYCRR § 130-1.1(c).
Accordingly, both Defendant's motion to strike and preclude, and Claimants' cross-motion for sanctions are denied.
Therefore, it is hereby
ORDERED, that Defendant's Motion (M-102218) and Claimants' Cross-Motion (CM-102401) are DENIED.
Dated: October 14, 2025
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER, Judge of the Court of Claims
Papers Read on these Motions:
1. Notice of Motion, Affirmation in Support, Exhibits Annexed
2. Notice of Cross-Motion, Claimants' Affirmation in Support of Cross-Motion and in Opposition, Exhibits Annexed
3. Affirmation in Opposition to Cross-Motion and in Further Support of Motion
4. Claimants' Affirmation in Reply and in Support of Cross-Motion